### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**RODNEY LOVETT,**
       **Petitioner,**

**v.**                              **No. 3:03cv370/RV/MD**

**JAMES V. CROSBY,**
       **Respondent.**

_____

### REPORT AND RECOMMENDATION

      **Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 4). Respondent has filed a response (doc. 17), to which petitioner has replied (doc. 23). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

### BACKGROUND AND PROCEDURAL HISTORY

      **Petitioner was charged in the Circuit Court of Escambia County, Florida with trafficking in cocaine and possession with intent to distribute cocaine. Also pending were one felony charge (tampering with evidence) and one misdemeanor charge (possession of marijuana), both in unrelated cases. Petitioner entered into a plea agreement by which the state agreed to dismiss the possession charge and the two unrelated charges in return for a plea of nolo contendere to the trafficking charge.**

The state further agreed to recommend a sentence at the low end of the guideline range, which at the time of the plea appeared to be in the neighborhood of five to six years, and petitioner pleaded nolo contendere as agreed.   After receiving a presentence investigation report, the court imposed a fifteen year sentence, which petitioner appealed without success.  He subsequently filed two motions for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, both of which were denied. Appeals of those orders were also unsuccessful.  Petitioner now seeks federal habeas relief.

## DISCUSSION

### Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neeley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the state court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require

citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the state court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the state court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a state court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, __ U.S. __, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).   An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the state court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the state court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The state court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the state court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the state court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be

presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11ᵗʰ Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## Exhaustion and Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[1] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard*

---

[1]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

      (B) (i)  there is an absence of available State corrective process; or

       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. 459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*. The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law

overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[2]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.

Prior to *Duncan*, the Eleventh Circuit broadly interpreted the "fair presentation" requirement.  *See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983)

---

[2]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

(petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734.  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v.*

*Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

## Petitioner's Grounds for Relief

1.  Due process denied where no evidentiary hearing held.

For his first ground for relief petitioner contends that the trial court denied him due process when it failed to provide an evidentiary hearing on his first 3.850 motion

in which he claimed ineffective assistance of counsel.  Petitioner asserts that only an evidentiary hearing could have adequately resolved his allegations concerning his attorney's ineffective performance.  Respondent concedes that this ground was raised when petitioner appealed the denial of his first motion for post-conviction relief, and is fully exhausted.

It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").  Because petitioner's claim does not represent a constitutional challenge to his confinement, it does not constitute grounds for habeas relief.

2.   Ineffective assistance of counsel resulting in involuntary plea.

For his second ground for relief petitioner contends that his attorney was constitutionally ineffective because he gave fraudulent misrepresentations leading to an involuntary plea.  Specifically, petitioner contends counsel told him that the plea agreement included an <u>agreement</u> that petitioner be given a sentence at the bottom of the guidelines, approximately 72 months, (doc. 4, p. 4(B)).  According to petitioner, he was surprised at the sentencing hearing when the court stated there was no agreement to that effect; rather, the plea agreement merely provided that the state would <u>recommend</u> a sentence at the bottom of the guidelines.  Petitioner argues that had he known he could receive a sentence in the middle of the guidelines, which is what the sentencing judge imposed, he would not have accepted the plea offer (*id.*).  Respondent contends that this issue is procedurally defaulted, arguing that although petitioner raised this issue in his second motion for

post-conviction relief, the trial court denied relief on the grounds of a procedural bar (it was successive).  Petitioner responds that he <u>did</u> raise this claim in the first Rule 3.850 proceeding--in his traverse to the state's response.

The undersigned concludes that this issue is not procedurally defaulted. Petitioner presented this argument in his traverse filed in the first Rule 3.850 proceeding (exh. F, pp. 24-27).  In its order denying relief, the trial court specifically stated that it had considered petitioner's traverse (*id.*, p. 28).  The court concluded that petitioner's contentions were without merit, including in its analysis the factual findings and references to the record upon which it relied (*id.*, pp. 28, 30-31). Petitioner raised the issue again in his second Rule 3.850 motion (exh. I, pp. 1-5). In its order denying relief, the trial court noted that petitioner's motion could be summarily denied as successive because petitioner was raising an "additional" ground of ineffective assistance after having raised an ineffective assistance of counsel claim in his first Rule 3.850 motion.  However, the state court ultimately denied relief on the grounds that the claim was procedurally barred "because the issue was addressed on the merits in the Court's March 21, 2002, Order."[3]  (Exh. I, p. 20).  Accordingly, the merits of the claim will be addressed.

A.  Clearly Established Federal Law

The law on ineffective assistance of counsel is well settled.  In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for  counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas

---

[3]The March 21, 2002 Order was the order denying relief on petitioner's first Rule 3.850 motion.

petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

### B.  Review of State Court Decision

The foundation of petitioner's claim is that he and his attorney agreed with the state that he would be given a sentence at the low end of the guidelines.  His attorney promised him such a sentence, and his attorney was ineffective in not advising him that there was no such agreement.  As discussed, the state court addressed this issue on the merits in its order denying petitioner's first Rule 3.850 motion, finding as follows:

> On March 21, 2000, the Defendant entered a plea of *nolo contendere* to Count 1 in case 99-4462.  In exchange for the Defendant's plea, the State *nolle prossed* Count 2 in case 99-4462, and 2 criminal charges in a separate case, 99-4356.  As part of the written sentence recommendation, the State agreed to recommend a bottom of the sentencing guideline scoresheet sentence.  The Defendant signed the written sentence recommendation.  On April 25, 2000, after receiving the Pre-Sentence Investigation report (PSI), the Court adjudicated Defendant guilty and sentenced him to 15 years incarceration in the Department of Corrections.  The Defendant's Criminal Punishment Code Scoresheet showed his sentencing range from 63.45 months in the Department of Corrections up to the statutory maximum of 30 years in the Department of Corrections.
>
> . . . .
>
> The Court notes that the Defendant faced a possible 30 year state prison sentence in this case.  The record shows the Court informed the Defendant of this fact and the Defendant stated he understood he faced up to 30 years incarceration in the Department of Corrections.  The potential sentence the Defendant faced in this matter was significantly worse than the sentence imposed.  It is difficult to see how the Defendant was prejudiced by entering a plea in this case, where charges and an entire criminal case were *nolle prossed*, and where the Court imposed half the incarceration it could legally have imposed for the Defendant's charge.

(Exh. F, pp. 28, 30-31).  The state court's denial of relief was neither contrary to, nor an objectively unreasonable application of, the *Strickland* standard.

A review of the plea agreement and the plea colloquy disposes of this issue.  The "Sentence Recommendation" (generally referred to as a plea agreement) stated

**"STATE'S RECOMMENDATION WILL BE BOTTOM OF SENTENCING GUIDELINE SCORESHEET RANGE AFTER RETURN OF PRESENTENCE INVESTIGATION TO VERIFY CORRECT SCORESHEET RANGE." (Exh. A, p. 9).**

Petitioner's plea colloquy was straightforward.  There was discussion of the plea agreement, which the court went through with petitioner, specifically explaining:

> **THE COURT: Under the agreement, the State is recommending that there will be a bottom of the sentencing guidelines scoresheet range after return of presentence investigation to verify correct scoresheet range, with an adjudication, ordering a PSI.**

(Doc. 17, exh. A, p. 24) (quoting plea colloquy proceeding).  The court then pointed out that the scoresheet had an erroneous maximum sentence, and that the maximum should have been 30 years rather than 40, which the court corrected.  It also noted that the state felt the lowest permissible sentence under the guidelines would be 67.2 months, but defense counsel thought it would be around 50.  That was the reason for ordering a presentence investigation report (PSI).  Then:

> **THE COURT:  Okay.  50 plus months.  Is that your understanding Mr. Lovett?  Do you understand that you could get up to 30 years, but the State is recommending - - *it's not an agreement as I understand it, it's a recommendation - -* that you could get anywhere from 30 years to 67.2 years (sic) in the state prison, and if the scoresheet comes out lower, it could go as low as ever what it comes out to be?  He says it's going to be 50 some odd months, which is a little over four years.  I don't know if it's going to come out that way or not.  If it does, then I'll be happy to consider it.  If it doesn't, then it doesn't.**
>
> **Do you understand what we're talking about?**
>
> **THE DEFENDANT:  Yes, Sir.**
>
> **THE COURT:  Okay, Is that your understanding of the plea and the sentence?**
>
> **THE DEFENDANT:  Yes, sir.**
>
> **THE COURT:  Is that what you want to do?**
>
> **THE DEFENDANT:  Yes, sir.**
>
> **THE COURT:  Have you talked it over with your lawyer?**

THE DEFENDANT:  Yes, sir.

(*Id.*, pp. 26-27) (quoting plea colloquy proceeding) (emphasis added).  The court then asked if petitioner had signed the agreement, understood it, thought it was in his best interest, and had not been forced to sign it or to enter the plea, to all of which petitioner responded affirmatively.  The court then accepted petitioner's plea of nolo contendere, dismissed the three remaining charges, and ordered a PSI.  (*Id.*, p. 27).

Thus, the court made it clear that although both the petitioner and the state were looking for a low guidelines sentence, the actual agreement was that the state would <u>recommend</u> a low guidelines sentence, that the agreement would not bind the court to impose such a sentence, and that depending on what came out of the presentence investigation report, the court could sentence petitioner to up to 30 years.  Petitioner said he understood.  It is clearly established that a defendant who pleads guilty (or nolo contendere) must be aware of the relevant circumstances and likely consequences surrounding the plea.  *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  In order for a plea to be knowing and voluntary, a defendant must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available.  *LoConte v. Dugger*, 847 F.2d 745, 751 (11th Cir. 1988).  A defendant must be notified of the direct consequences of his plea including the range of punishment he might receive.  *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 89 L.Ed.2d 437 (1984); *Pardue v. Burton*, 26 F.3d 1093, 1096 (11th Cir. 1994).

As this court is well familiar, "the representations of the defendant . . . [at a plea proceeding], as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).  Here petitioner was made fully aware of the possible maximum sentence and said he understood that the agreement with the state was not an agreed sentence but only an agreement for the state to make a recommendation.  Petitioner cannot now

disavow his solemn declarations at the time of his plea. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

    3.   <u>Due process denied by court's refusal to allow withdrawal of plea.</u>

    For his third ground for relief petitioner contends that the trial court erred in not permitting him to withdraw his plea.   He asserts that he should have been allowed to do so because the state did not keep its end of the bargain.   Respondent concedes that petitioner "exhausted his state court remedies on this ground by presenting this argument in his pro se brief on direct appeal."   (Doc 17, p. 20).

    A.  Clearly Established Federal Law

    "'[A] plea of guilty entered by one fully aware of the consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"   *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d747 (1970) (quoting *Shelton v. United States*, 242 F.2d 101, 115 (5th Cir. 1957).   Where the state fails to hold up its end of the bargain, a defendant is entitled to some form of habeas relief.   *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (holding that the case should be remanded for the state court to determine whether the petitioner would be allowed to withdraw his plea, or whether the state should be compelled to keep its end of the bargain).

    B.  Review of State Court Decision

    Petitioner's argument must fail on the facts.   What he characterizes as a promise to give him a low end sentence was only a promise to recommend such a sentence, as was shown above.   The court made this clear at the plea colloquy, and petitioner said he understood it.   The state did not retract its recommendation, but told the court at sentencing that the agreement was only a recommendation, and left

the sentence to the court's discretion (exh. A, pp. 17, 19, 32).  Because the state's recommendation was not binding on the court, petitioner was sentenced to a greater term than he had hoped for.  The state court's ruling affirming the conviction and sentence did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1), and was not an "unreasonabl[e] appli[cation of] the relevant Supreme Court authority," *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED that the 28 U.S.C. § 2254 amended petition for writ of habeas corpus (doc. 4), challenging the conviction and sentence in *State of Florida v. Rodney Earl Lovett* in the Circuit Court of Escambia County, Florida, case no. 99-4462, be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 14th day of June, 2005.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 701 (11th Cir. 1988).